1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 26, 2021

SEAN F. McAVOY, CLERK

4

5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

7

BRENDA B.,

8

Plaintiff,

9

v.

10

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,

11

12

Defendant.

NO:  1:19-CV-03185-RHW

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

13

14

BEFORE THE COURT are the parties' cross motions for summary

judgment.  ECF Nos. 10 and 11.  This matter was submitted for consideration

15

without oral argument.  The Plaintiff is represented by Attorney Nicholas D.

16

17

Jordan.  The Defendant is represented by Special Assistant United States Attorney

Erin F. Highland.  The Court has reviewed the administrative record, the parties'

18

19

completed briefing, and is fully informed.  For the reasons discussed below, the

20

21

ORDER ~ 1

Court **GRANTS** Plaintiff's Motion for Summary Judgment, ECF No. 10, and **DENIES** Defendant's Motion for Summary Judgment, ECF No. 11.

## JURISDICTION

Plaintiff Brenda B.[1] protectively filed for disability insurance benefits on June 17, 2015, alleging an onset date of August 21, 2014.  Tr. 190-98.  At the hearing, the alleged onset date was amended to October 22, 2014.  Tr. 43.  Benefits were denied initially, Tr. 106-12, and upon reconsideration, Tr. 114-19.  Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on March 23, 2018.  Tr. 39-75.  Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ denied benefits, Tr. 12-34, and the Appeals Council denied review.  Tr. 1.  The matter is now before this court pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 46 years old at the time of the hearing.  Tr. 43.  She graduated from high school.  Tr. 43.  Plaintiff lives with her husband.  Tr. 50.  Plaintiff has

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial.

work history as a daycare worker and a cleaner.  Tr. 44-46, 67.  Plaintiff testified

that she was unable to perform her childcare job anymore because she hurt her

back.  Tr. 45.  Plaintiff had back surgery prior to the relevant adjudicatory period,

and pancreatic surgery during the relevant period.  Tr. 47-48, 73.  She testified that

she uses a cane on "bad back days," does not "really" leave her house, her right leg

"burns on the inside," and she has trouble sleeping.  Tr. 47, 50, 52, 57.  Plaintiff

reported that she has chronic pancreatitis which causes constant abdominal pain

and nausea, and she throws up three to four times a week.  Tr. 48.  She keeps her

hands or a pillow clutched against her stomach five to six hours a day because of

her stomach issues and back pain.  Tr. 63-64.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

ORDER ~ 3

reviewing court must consider the record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot,

ORDER ~ 4

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §

ORDER ~ 5

404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of

ORDER ~ 6

adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 22, 2014, the amended alleged onset date. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: spinal impairment, chronic pancreatitis with pancreatic cysts (status post-partial pancreatectomy), and obesity. Tr. 17. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 19. The ALJ then found that Plaintiff has the RFC

to perform sedentary work as defined in 20 CFR 404.1567(a) except she cannot climb ladders, rope, or scaffolding. She can occasionally stoop, kneel, and crawl. She can frequently balance, crouch, and climb ramps and stairs. She cannot have concentrated exposure to hazards, vibration, or extreme cold.

Tr. 19.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 26. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: final assembler, document preparer, and charge account clerk. Tr. 26-27. On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from October 22, 2014, through the date of the decision. Tr. 27.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act. ECF No. 10. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ failed to properly assess Listing 1.04A at step three;

2. Whether the ALJ properly considered Plaintiff's symptom claims;

3. Whether the ALJ properly weighed the medical opinion evidence; and

4. Whether the ALJ erred at step five.

ORDER ~ 8

# DISCUSSION

## A. Step Three

At step three of the sequential evaluation of disability, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. § 416.920(a)(4)(iii). The Listing of Impairments "describes for each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. § 416.925. To meet a listed impairment, a claimant must establish that she meets each characteristic of a listed impairment relevant to her claim. 20 C.F.R. § 416.925(d). If a claimant meets the listed criteria for disability, she will be found to be disabled. 20 C.F.R. § 416.920(a)(4)(iii). The claimant bears the burden of establishing she meets a listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Each Listing sets forth the "symptoms, signs, and laboratory findings" that must be established in order for claimant's impairment to meet the listing. *Tackett,* 180 F.3d at 1099. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) (emphasis in original). Here, the criteria for Listing 1.04A "disorders of the spine" are satisfied when there is evidence of

ORDER ~ 9

spinal disorder "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord," as well as "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

Plaintiff argues the ALJ erred at step 3 by failing to properly assess whether Plaintiff met or equaled Listing 1.04A. ECF No. 10 at 4-8. "A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not" meet or equal a listed impairment. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). An ALJ must make specific findings regarding why a plaintiff does not meet all the Listing requirements. *See id.* at 512–13. However, even if an ALJ makes a boilerplate finding that an impairment does not meet a Listing, this Court will not reverse where the ALJ made sufficiently detailed findings in other portions of her decision. *See Lewis,* 236 F.3d at 513. Moreover, where a Listing has multiple requirements that an impairment must satisfy, even if an ALJ does not make findings about each Listing requirement, the ALJ's decision is sufficiently specific if the ALJ discussed and evaluated evidence that one of the requirements was not met. *See id.*

ORDER ~ 10

Here, in support of this finding, the ALJ noted that (1) Plaintiff's "spinal imaging does not document the factors for listing 1.04A"; (2) imaging was "without significant changes since December 2008" and Plaintiff was "nonetheless gainfully employed" between 2006 and October 2014; and (3) a 2017 nerve conduction study was normal, "with no evidence of neuropathy or radiculopathy." Tr. 19.  As an initial matter, it is well-settled that Plaintiff's work history and activities prior to her alleged onset date are of limited probative value. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008); *see also* SSR 96-8, 1996 WL 374184 at *2 (step three determination made on basis of medical factors alone).  Moreover, as noted by Plaintiff, while the nerve conduction study in May 2017 found no evidence of radiculopathy, the ALJ failed to consider that Dr. Ventre, who performed the nerve conduction study, specifically noted that the EMG is not a sensitive test for sensory radiculopathy. ECF No. 10 at 14 (citing Tr. 785).

Finally, and most notably, the ALJ in this case failed to identify any of the specific criteria needed to meet or equal Listing 1.04A, including the threshold requirement of evidence of spinal disorder "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.  Moreover, the Court is unable to discern any portion of the ALJ's decision that contains "sufficiently detailed findings" as to why Plaintiff

ORDER ~ 11

does not meet any of the specific Listing requirements of 1.04A. Instead, the ALJ relied entirely on a general reference to the 2014 MRI as "not document[ing] the factors" for Listing 1.04A, and a summary of evidence elsewhere in the decision, without specific evaluation as to whether that evidence meets or equals any particular element of Listing 1.04A.

The objective evidence referenced by the ALJ includes findings of normal gait, negative straight leg raises, normal lower extremity strength, nerve conduction study within normal limits, and 2014 MRI "imaging" that showed spondylosis, facet arthrosis, and minimal nerve root contact;. Tr. 19 (citing Tr. 345, 381, 385, 390, 393, 397-99, 666-67, 785, 820, 1149, 1154-56). The ALJ additionally cited findings of slow, impaired, or guarded gait; a limp in her right leg; decreased sensation in her right leg; positive seated and supine straight leg raises; decreased range of motion in her lumbar spine; and decreased strength in her right leg and foot. Tr. 20-21 (citing Tr. 341-42, 347, 354, 358, 363, 365-69, 373, 641, 667, 741-50, 760-61, 785, 820-21). However, in rendering a decision, the ALJ must provide the reasoning underlying the decision "in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). Standing alone, a summary of the objective medical evidence from the relevant adjudicatory period, without any finding as to why this evidence fails to meet or equal Listing "1.04," is insufficient for this Court to meaningfully review

ORDER ~ 12

1   the ALJ's decision.  *See Brown-Hunter*, 806 F.3d at 492 (quoting *Marsh v. Colvin*,

2   792 F.3d 1170, 1173 (9th Cir. 2015) ) (a district court may not "substitute [its] own

3   discretion for that of the agency" because " 'the decision on disability rests with

4   the ALJ and the Commissioner ... in the first instance, not with a district court.' ").

5        Moreover, the record contains considerable evidence that would support a

6   finding that Plaintiff meets criteria in Listing 1.04A, including compromised nerve

7   roots, neuroanatomic distribution of pain, limited range of motion, muscle

8   weakness, decreased sensation, and positive straight leg tests.  *See* 20 C.F.R. Pt.

9   404, Subpt. P, App. 1, § 1.04A.  First, as noted by Plaintiff, the ALJ failed to

10  consider an October 2015 independent medical examination (IME) that diagnosed

11  S1 radiculopathy and noted "a permanent aggravation of the spondylosis with

12  radiculopathy"; a notation by neurologist Dr. Hoan P. Tran that the 2014 MRI

13  revealed a severely degenerated disk and a "herniation effaced the right ventral

14  dura and compromised the right lateral recess and the exiting nerve root"; and Dr.

15  Kopp's October 2016 findings of muscle atrophy in the calf, significantly positive

16  straight leg test, both seated and supine, ongoing sciatic nerve irritation, and

17  limited range of motion.  ECF No. 10 at 15 (citing Tr. 370-71, 627, 775-79).  In

18  addition, while not included in the ALJ's summary of the medical evidence, the

19  Court's review of the record from the adjudicatory period reveals additional

20  findings of lumbosacral and lower lumbar tenderness, impaired gait, muscle

21

ORDER ~ 13

1  spasms in the lower lumbar, decreased range of motion, reduced sensation,

2  decreased strength, atrophy, "evidence to indicate fresh nerve root irritation," and

3  diagnoses of lumbar disc disorder with myelopathy, sciatica, and lumbar

4  radiculopathy.  Tr. 334, 379, 381, 390, 394, 399, 478, 487-88, 627, 629, 699-708,

5  763, 785, 1048-50, 1052, 1057, 1162, 1171, 1178, 1191, 1195.

6       Based on the foregoing, the Court finds the ALJ erred by failing to evaluate

7  the specific elements of Listing 1.04A and the relevant medical evidence.  This

8  error cannot be harmless because, as discussed in detail above, the record included

9  evidence that may support a finding that Plaintiff's alleged back impairment meets

10  Listing 1.04A.  Upon remand, the ALJ must properly assess the medical evidence

11  as it pertains to Listing 1.04A and, if necessary, call a medical expert regarding

12  whether the evidence in the record supports a finding that Plaintiff's claimed

13  impairments meet or equal the severity of a Listing at step three.

14  **B. Plaintiff's Symptom Claims**

15       An ALJ engages in a two-step analysis when evaluating a claimant's

16  testimony regarding subjective pain or symptoms.  "First, the ALJ must determine

17  whether there is objective medical evidence of an underlying impairment which

18  could reasonably be expected to produce the pain or other symptoms alleged."

19  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not

20  required to show that her impairment could reasonably be expected to cause the

21

ORDER ~ 14

severity of the symptom he has alleged; he need only show that it could reasonably

have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591

(9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted). "General findings are insufficient; rather, the

ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

must make a credibility determination with findings sufficiently specific to permit

the court to conclude that the ALJ did not arbitrarily discredit claimant's

testimony."). "The clear and convincing [evidence] standard is the most

demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920,

924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms; however,

Plaintiff's "statements concerning the intensity, persistence and limiting effects of

ORDER ~ 15

these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons.  Tr. 20.

First, the ALJ noted that Plaintiff's "spinal impairment was concurrent with gainful employment.  Although she has reported a severe worsening of her spinal impairment in mid-2014, she nonetheless continued to work until October 2014 without reporting this alleged aggravation."  Tr. 21.  Generally, the ability to work can be considered in assessing credibility.  *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1227 (9th Cir. 2009); *see also* 20 C.F.R. § 404.1571 (employment "during any period" of claimed disability may be probative of a claimant's ability to work at the substantial gainful activity level).  However, in this case, Plaintiff reported that she re-injured her back in August 2014, and was subsequently fired from her job only two months later, in October 2014.  *See* Tr. 45, 336, 340.  "It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed,* that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment."  *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007)).  Moreover, Plaintiff's amended alleged onset date of disability is October 22, 2014, and, as acknowledged by the ALJ, Plaintiff stopped working in October 2014.  *See* Tr. 20.  Plaintiff's work history prior to her onset date of disability is of limited probative value.  *See Carmickle*, 533 F.3d at 1165; *Turner v. Comm'r of*

ORDER ~ 16

1   *Soc. Sec.*, 613 F.3d 1271, 1224 (9th Cir. 2010).  For all of these reasons, Plaintiff's

2   ability to work prior to her alleged onset date was not a clear and convincing

3   reason, supported by substantial evidence, for the ALJ to reject Plaintiff's

4   symptom claims.

5          Second, the ALJ found Plaintiff's allegations of disability were inconsistent

6   with her "recent activities."  Tr.  23.  A claimant need not be utterly incapacitated

7   in order to be eligible for benefits.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.

8   1989); *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("the mere fact

9   that a plaintiff has carried on certain activities . . . does not in any way detract from

10  her credibility as to her overall disability.").  Regardless, even where daily

11  activities "suggest some difficulty functioning, they may be grounds for

12  discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a

13  totally debilitating impairment."  *Molina*, 674 F.3d at 1113.  However, the only

14  activities cited by the ALJ support of this finding was a single report that she did

15  household cleaning for two hours at one time but had to stop because of back pain,

16  and a single report to a treating provider in October 2017 that she went hiking.  Tr.

17  23 (citing Tr. 867, 874).  Thus, while it is reasonable for the ALJ to consider

18  Plaintiff's daily activities, this minimal evidence does not rise to the level of a clear

19  and convincing reason, supported by substantial evidence, to discount all of

20  Plaintiff's symptom claims.

21

ORDER ~ 17

Third, the ALJ noted that Plaintiff received unemployment benefits for the first and second quarters of 2015, and her attestation that she was "'ready, able, and willing, immediately to accept any suitable work which may be offered' to her" was "incompatible with [Plaintiff's] testimony of being unable to sustain any work activity due to the alleged effects of her pain symptoms." Tr. 23. While the receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime, the record here does not establish whether Plaintiff held herself out as available for full-time or part-time work. According to the Ninth Circuit, only the former is inconsistent with her disability allegations. *See Carmickle*, 533 F.3d at 1161-63. Thus, this is not a clear and convincing reason to discredit Plaintiff's symptom claims.

Fourth, the ALJ noted that Plaintiff saw her treating physician, Dr. Gondo, in September 2014, and she received a refill of pain medication for chronic back pain, but "she made no documented references to any recent injury to her spine or lower back"; and in October 2014 she returned to Dr. Gondo and "reported worsening back pain for the prior two months," but "did not make any documented references to a recent injury." Tr. 20 (citing Tr. 380-81). Defendant generally contends the ALJ properly relied on this "evidence that contradicted Plaintiff's allegations that her spinal impairment had worsened." ECF No. 11 at 4. However, as noted by Plaintiff, Defendant "fails to acknowledge" that Plaintiff received

treatment from Dr. Gondo in September and October of 2014 specifically for her chronic and worsening back pain, including medication refills and an injection to provide relief from 10/10 back pain.  ECF No. 12 at 3 (citing Tr. 379-82).  In evaluating Plaintiff's symptom claims, the ALJ may consider inconsistencies in Plaintiff's testimony or between her testimony and her conduct.  *See Thomas,* 278 F.3d at 958–59.  However, to the extent the ALJ relied on Plaintiff's alleged failure to report an aggravation of her back injury, reported prior to her alleged onset date of disability, as a reason reject all of Plaintiff's symptom claims from the relevant adjudicatory period, it was not a clear and convincing reason supported by substantial evidence.  *See Carmickle*, 533 F.3d at 1165 (evidence prior to her onset date of disability is of limited probative value).

Fifth, and finally, the ALJ found the objective evidence was inconsistent with Plaintiff's symptom claims, including evidence of improvement in her pain symptoms.  Tr. 20-22.  Medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).  However, an ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence.  *Rollins*,

1    261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*,

2    885 F.2d at 601.  Here, the ALJ set out the medical evidence purporting to

3    contradict Plaintiff's claims of disabling limitations, including treatment notes that

4    noted Plaintiff normal gait; negative straight leg raises; normal lower extremity

5    strength; nerve conduction study within normal limits; 2014 MRI "imaging" that

6    showed spondylosis, facet arthrosis, and minimal nerve root contact; soft and

7    nontender abdomen; mild abdominal pain and nausea; relief of symptoms

8    following pancreatic cyst aspiration; and "well-controlled pancreatitis."  Tr. 20-23

9    (citing Tr. 345, 379, 381, 385, 389-90, 393, 397-99, 413, 421, 666-67, 740, 785,

10    820, 1082, 1089, 1125, 1149, 1154-56).

11        Plaintiff argues that her symptom claims are supported by the medical

12    record, including findings of tenderness, decreased lumbar range of motion, muscle

13    spasms, positive straight leg test, antalgic gait, abdominal pain, and nausea.  ECF

14    No. 10 at 7-8.  In addition, Plaintiff contends that "[w]hile some improvement is

15    noted with treatment, remaining limitations still need to be considered."  ECF No.

16    12 at 4.  However, regardless of whether the ALJ erred in finding Plaintiff's

17    symptom claims were not corroborated by objective evidence of record, including

18    evidence of intermittent improvement in Plaintiff's symptoms, it is well-settled in

19    the Ninth Circuit that an ALJ may not discredit a claimant's pain testimony and

20    deny benefits solely because the degree of pain alleged is not supported by

21    ORDER ~ 20

objective medical evidence. *Rollins*, 261 F.3d at 857; *Bunnell*, 947 F.2d at 346-47. As discussed in detail above, the additional reasons given by the ALJ for discounting Plaintiff's symptom claims were legally insufficient. Thus, because the lack of corroboration by objective evidence cannot stand alone as a basis for rejecting Plaintiff's symptom claims, the ALJ's finding is inadequate.

For all of these reasons, the ALJ's rejection of Plaintiff's symptom claims is not supported by clear and convincing reasons, and must be reconsidered on remand.

### C. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's

ORDER ~ 21

opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester*, 81 F.3d at 830-31). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray,* 554 F.3d at 1228 (quotation and citation omitted).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources. 20 C.F.R. § 416.913(d). The ALJ need only provide "germane reasons" for disregarding an "other source" opinion. *Molina*, 674 F.3d at 1111. However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

Plaintiff argues that the ALJ erroneously considered the opinions of treating provider Lisa Rutherford, ARNP, treating physician Roy Gondo, M.D., examining provider David Bullock, P.T., examining physician James Kopp, M.D., treating neurologist Hoan Tran, M.D., and examining physicians Clarence Fossier, M.D. and L. David Rutberg, M.D. ECF No. 10 at 10-14. As an initial matter, the Court

notes that Plaintiff fails to raise specific challenges to multiple reasons given by the

ALJ for giving less weight to these medical opinions.  *See* Tr. 24 (discounting Ms.

Rutherford's opinions because they were temporary, inconsistent with work

history, spinal imaging and other clinical studies, longitudinal examination

findings, activities, and receipt of unemployment benefits), Tr. 24-25 (discounting

Mr. Bullock's opinion because he was not an acceptable medical source and it was

inconsistent with the record), Tr. 25 (discounting Dr. Gondo's opinion because it

was inconsistent with work history, clinical studies showing no change in his

spinal impairment, his own examination findings, and lack of objective evidence).

However, most of these reasons were not raised with specificity in Plaintiff's

opening brief; thus, particularly in light of the need to reconsider the medical

evidence at step three, the Court declines to address these issues in detail.  *See*

*Carmickle*, 533 F.3d and 1161 n.2 (court may decline to address issues not raised

with specificity in Plaintiff's opening brief).

   In large part, Plaintiff argues that the ALJ erred by assigning Ms.

Rutherford, Mr. Bullock, Dr. Kopp and Dr. Gondo's opinions less weight because

"other professional assessments to be more consistent with the record as a whole."

Tr. 24-25 (citing Tr. 89-102, 669-691, 821, 861).  Generally, it is proper for the

ALJ to evaluate these medical opinions based on the amount of relevant evidence

that supports the opinion, and the consistency of the medical opinion with the

ORDER ~ 23

1    record as a whole.  *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.

2    However, as noted by Plaintiff, the ALJ failed to consider medical opinion

3    evidence from the relevant adjudicatory period, including the October 2015 IME

4    conducted by Clarence Fossier, M.D. and L. David Rutberg, M.D.  ECF No. 10 at

5    13 (citing Tr. 365-72).  Dr. Fossier and Dr. Rutberg opined that Plaintiff had "a

6    permanent aggravation of [] spondylosis with radiculopathy," decreased sensation,

7    "exquisitely positive" straight leg raising in the seated and supine positions, and

8    could not return to her job.  Tr. 369-70.  "While the ALJ assigned some weight to

9    other IMEs performed, he failed to provide any kind of a weight analysis for this

10   IME that happened to concur with [Plaintiff's] treating provider opinions."  ECF

11   No. 10 at 13; *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (failure to

12   address medical opinion was reversible error).  Moreover, when explaining his

13   reasons for rejecting medical opinion evidence, the ALJ must do more than state a

14   conclusion; rather, the ALJ must "set forth his own interpretations and explain why

15   they, rather than the doctors', are correct."  *Reddick v. Chater*, 157 F.3d 715, 725

16   (9th Cir. 1998).  "This can be done by setting out a detailed and thorough summary

17   of the facts and conflicting clinical evidence, stating his interpretation thereof, and

18   making findings."  *Id.*  Here, the ALJ failed to offer specific findings as to how the

19   unidentified "other professional assessments" were "more consistent with the

20

21

ORDER ~ 24

record as a whole" than the treating and examining opinions of Ms. Rutherford, Mr. Bullock, Dr. Kopp, Dr. Gondo, Dr. Fossier, and Dr. Rutberg.  *See* Tr. 24-25.

Based on the foregoing, and in light of the need to remand for reconsideration of the step three finding and Plaintiff's symptom claims, the ALJ is directed to reconsider the medical opinion evidence and provide legally sufficient reasons for evaluating the opinions, supported by substantial evidence.

**D. Step Five**

Plaintiff argues that the ALJ erred in determining Plaintiff's RFC, which resulted in harmful error at step five.  ECF No. 10 at 15.  Specifically, Plaintiff contends that "[b]ecause the ALJ failed to properly consider the medical opinion evidence and symptom testimony, the ALJ's RFC assessment does not account for the full extent of [Plaintiff's] functional limitations and, thus, cannot support the ALJ's disability determination."  ECF No. 10 at 16.  Because the analysis of the ALJ's RFC assessment and step five findings are dependent on the ALJ's evaluation of Plaintiff's symptom claims and the medical evidence, which the ALJ is instructed to reconsider on remand, the Court declines to address this challenge here.  On remand, the ALJ is instructed to conduct a new sequential analysis, if necessary, after reconsidering the step three finding.

ORDER ~ 25

# REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]"  *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met).  This policy is based on the "need to expedite disability claims."  *Varney*, 859 F.2d at 1401.  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings

ORDER ~ 26

would serve a useful purpose).  "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate."  *Treichler*, 775 F.3d at 1101.  On remand, the ALJ must reevaluate whether Plaintiff meets or equals the severity of a Listing at step three. If appropriate, the ALJ should order additional consultative examinations and/or take additional testimony from a medical expert.  If necessary, the ALJ should reconsider the remaining steps of the sequential analysis, including evaluation of the medical opinion evidence and Plaintiff's symptom claims, reassessing Plaintiff's RFC and, if necessary, taking additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 10, is **GRANTED,** and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

///

///

///

///

ORDER ~ 27

2.  Defendant's Motion for Summary Judgment, ECF No. 11, is **DENIED**.

The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgement shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** April 26, 2021.


*s/ Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge

ORDER ~ 28